## LON McCULLOM v. STATE.

No. A-3774.    Opinion Filed Oct. 14, 1922.
(209 Pac. 781.)

(Syllabus.)

1. **Trial—Objectionable Instructions—Lack of Exceptions and Requests.** Where no exceptions to any of the instructions given by the court are taken, and no further instructions are requested by the accused, the accused as a matter of right has no cause for complaint against the instructions given, unless they appear to be fundamentally wrong and prejudicial to the rights of the accused.

2. **Homicide—Instruction Defining Manslaughter in Second Degree Held Proper.** Under the circumstances here it was proper for the court to define manslaughter in the second degree.

3. **Trial—Instructions not Shifting Burden of Proof to Defendant.** The instructions, fairly construed, did not shift the burden of proof to the defendant.

4. **Appeal and Error—Lack of Objections Below—Instructions—Failure to Define "Culpable Negligence."** The failure of the court to define the term "culpable negligence" as used in the instructions—if, indeed, it was not sufficiently defined—when the defendant made no request for a definition of the term and saved no exception to the failure of the court to define it, is not ground for reversal.

5. **Trial—Instruction on Character Evidence—Requisites.** Ordinarily, an instruction on character evidence should be to the effect that such evidence should be weighed with all the other facts

and circumstances in the case tending to raise a reasonable doubt as to the guilt of the accused, without designating or pointing out to the jury any particular issue involved.

6.    **Homicide—Instruction as to Evidence of Good Character of Accused not Prejudicial.** An instruction that the good character of the accused should be considered only to determine who was the probable aggressor was not prejudicial, where the verdict was for manslaughter in the second degree, predicated upon criminal negligence.

Appeal from District Court, Johnston County; J. H. Linebaugh, Judge.

Lon McCullom was convicted of manslaughter in the second degree, and he appeals. Affirmed.

Cornelius Hardy, for plaintiff in error.

Geo. F. Short, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J. Plaintiff in error, defendant below, was by verdict of a jury found guilty of manslaughter in the second degree, December 3, 1919, and his punishment fixed at six months' imprisonment in the county jail and a fine of $250, and on December 4th judgment was rendered accordingly.

The charging part of the information states that the defendant on the 3d day of April, 1919, without authority of law, and without design to effect the death of Burney Underwood, and in the heat of passion, and in a cruel and unusual manner, by means of a dangerous weapon, to wit, a loaded pistol, did unlawfully and feloniously kill and murder Burney Underwood, by striking him upon the head and face with said pistol and by shooting and discharging a leaden bullet from said pistol into the body of Burney Underwood, inflicting upon him mortal wounds, from which he died on the 4th day of April, 1919, and that the killing was neither justifiable nor excusable.

At the time of this homicide the defendant was a constable living in the town of Ravia, Okla. The evidence discloses that Burney Underwood was an Indian, and on that day was in an intoxicated condition and a passenger on the southbound Frisco train coming into Ravia. When the train stopped at Ravia the conductor called for an officer, and the conductor and brakeman put the deceased off the train, and told the defendant to take charge of him. The defendant thereupon took charge of the deceased and attempted to put him in a service car and take him to the county jail at Tishomingo; the deceased resisted by striking, pushing, and scuffling, and refused to enter the car. While this resistance was going on the defendant drew his pistol to strike the deceased and subdue him, and the pistol in some manner flew out of defendant's hand, and both men made an effort to get possession of the gun, the defendant finally recovering it; defendant then struck deceased over the head with the pistol. The defendant then started towards a garage with the deceased for the purpose of getting a car to take him to Tishomingo. After they had proceeded a little distance the scuffling was renewed. The defendant claims that the deceased tried to take defendant's gun from his pocket, and that both of them grasped the gun at the same time, and that the gun was accidentally discharged, inflicting the mortal wound upon the deceased. The testimony of other witnesses tends to show that the defendant seized the gun alone, and discharged the fatal shot, either purposely or accidentally. The testimony of a number of witnesses indicates that the defendant used his gun unnecessarily and in a reckless manner; that the deceased was in such a maudlin, drunken condition that he could have been easily handled without the use of a gun. There was also some evidence corroborating the defendant in his claim that the shooting was accidental.

The defendant in his brief insists that the verdict is not supported by sufficient evidence, and that the court erred in instructing the jury upon manslaughter in the second degree, and did not correctly state the law in instructions No. 7, 12, and 13, given by the court.

The defendant at the trial took no exceptions to any of the instructions given by the court, and made no further request for instructions covering the matters complained of, or otherwise. Under this state of the record, as a matter of right the defendant has no cause for complaint touching the instructions of the court, unless it should appear that some of these instructions were fundamentally wrong and prejudicial to the rights of the defendant. To us it appears that the conflicting evidence, some of which indicated that the defendant unnecessarily and negligently discharged the gun, resulting in the fatal tragedy, called for an instruction on manslaughter in the second degree. It was an issue raised by the evidence, and under such circumstances it was proper for the court—indeed, it is his duty—to instruct the jury upon such issue, as upon every material issue raised by the evidence.

Defendant claims that instruction No. 7 places the burden of proving justification upon the defendant, that part of the instruction complained of being as follows:

"In this connection, the court instructs you that if you find from the evidence in this case that at the time of the killing the defendant was performing his official duties as an officer, and had made an arrest of the deceased, and that the deceased was resisting such arrest, then the officer had a right to use whatever force was necessary, with usual and ordinary caution, to compel the deceased to submit to said arrest, and if while so doing the gun of the defendant was accidentally discharged, and there was no intent upon the part of the defendant to kill the deceased, and that the defendant was not culpably negligent in the manner in which he was handling

said gun when it was discharged, or if you have a reasonable doubt thereof, then the court instructs you that it would be excusable homicide, and it would be your duty to find the defendant not guilty."

Considering this instruction along with the other instructions given, as applied to the evidence, we cannot say that that part of it relating to reasonable doubt is fundamentally wrong. We think the court intended to say, and the jury doubtless so understood, that if they entertained a reasonable doubt that the defendant exercised ordinary caution and did not negligently discharge his gun, they should acquit him. Dobbs v. State, 5 Okla. Cr. 480, 114 Pac. 358, 115 Pac. 370; Moore v. State, 4 Okla. Cr. 212, 111 Pac. 822. At any rate, if the defendant desired to have this instruction clarified, that question should have been called to the attention of the court at the time.

The failure of the court to define the term "culpable negligence" if, indeed, it was not sufficiently defined—when the defendant made no request for a definition of the term, and saved no exception to the failure of the court to define it, is not ground for reversal. Fooshee v. State, 3 Okla. Cr. 668, 108 Pac. 554; Holmes v. State, 6 Okla. Cr. 541, 119 Pac. 430, 120 Pac. 300; Lumpkin v. State, 5 Okla. Cr. 488, 115 Pac. 478.

Defendant complains further of instruction No. 13, as follows:

"Evidence has been offered tending to prove the good character of the defendant prior to the killing. The court instructs you that you may consider this evidence along with all other evidence, facts, and circumstances in the case, but only for the purpose of ascertaining who was the probable aggressor in the difficulty at the time, and in case you convict the defendant, then you may consider the evidence in arriving at the proper punishment. The mere fact, however, that a man may possess a good character will not exonerate him

from punishment for his crime, and should the guilt of the defendant be established to your satisfaction beyond a reasonable doubt, in the light of these instructions, then you should convict him, although you might believe him to have been a man of good character before the crime was committed.''

Portions of the evidence in this case raised the issue of self-defense. The jury by their verdict, finding the defendant guilty of manslaughter in the second degree, necessarily found that the homicide was not committed in self-defense, but was due to the carelessness or culpable negligence of the defendant in the use of his gun. We therefore think that this instruction, to the effect that character evidence should be considered by the jury ''only for' the purpose of ascertaining who was the probable aggressor in the difficulty,'' under' the circumstances here, was not prejudicial. Ordinarily an instruction on character evidence should be to the effect that such evidence should be weighed with all the other facts and circumstances in the case tending to raise a reasonable doubt as to the guilt of the accused, without designating or pointing out to the jury any particular issue involved. Wilson v. State, 3 Okla. Cr. 714, 109 Pac. 289; Holmes v. State, 6 Okla. Cr. 541, 119 Pac. 430, 120 Pac. 300; Wells v. Ty., 14 Okla. 436, 78 Pac. 124; Cannon v. Ty., 1 Okla. Cr. 600, 99 Pac. 622. If the homicide was accidental, yet brought about by the culpable negligence of the defendant, then neither party could be considered the aggressor. The jury by its verdict so found; therefore the instruction' as to which of the parties might be the aggressor, whether correct or incorrect, did not operate to the defendant's prejudice.

There is ample evidence in the record tending to show that the defendant was too free and careless with the use of his gun, which carelessness contributed to or was the cause of the death of the party under arrest and in the custody of the defendant. The defendant, as an officer, had the right to

use all the force that was necessary, with usual and ordinary caution, to compel the person lawfully arrested to submit to his custody. This is a necessary power lodged with all officers to enable them to effectually enforce the law and for their own safety. At the same time officers, as well as others, should have a due regard for human life, and should exercise at least usual and ordinary judgment in the use of firearms, so as not to unnecessarily take the life of others. There is evidence to show that no such care was exercised by the defendant.

The punishment, as fixed by the jury, was imprisonment for six months in the county jail and a fine of $250. This, under the circumstances here, was a very light sentence for so grave an offense. The judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.